

U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

---

*US Custom House, 7th Floor*
*2nd and Chestnut Streets*
*Philadelphia, PA 19106*

October 1, 2021

Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **Fredrick Scheinin**, Reg. No 76394-054
      Case No. 20 Cr. 133 (JSR)

Dear Judge Rakoff:

I am writing in response to Your Honor's September 14, 2021, order in the above-captioned matter.

The Bureau of Prisons' ("BOP") review of this matter has not yet been completed and responses below are based, in part, on conversations with those conducting the review. Your Honor has requested the Metropolitan Detention Center ("MDC") Brooklyn's response to the following questions:

- Which of the medications listed in the Court's June 22, 2021 medical attention order, which directed the BOP to administer certain medications to Scheinin, were in fact administered to Scheinin after his remand to USMS custody? If any listed medications were not administered on schedule, why were they not administered?

*Medical records show Mr. Scheinin was prescribed Epihephrine, Propranolol and Sertraline. He was not prescribed Levocetirizine and Alprazolam because these medications are not listed on the Bureau of Prisons National Formulary.[1] Medical staff cannot prescribe or procure non-formulary medications without an approved non-formulary request, as doing so is considered an unauthorized use of government funds. Institutions submit non-formulary requests to the Bureau of Prisons' Chief Pharmacist for approval. MDC Brooklyn medical staff intended to make the non-formulary request on June 23, 2021. The BOP understands that upon arriving at MDC Brooklyn, Mr. Scheinin stated that he had already taken his daily dosages of prescribed medications. Thus, no dosage of prescribed medication was skipped.*

---

[1] The National Formulary can be found at www.bop.gov/resources/pdfs/2020_winter_formulary_part_1.pdf and www.bop.gov/resources/pdfs/2020_winter_formulary_part_2.pdf.

- When did the MDC Brooklyn medical staff receive the Court's medical attention order?

*MDC Brooklyn was aware of the medical attention order when Mr. Scheinin was undergoing his in-processing or intake into the institution. Moreover, the psychologist who spoke with Mr. Scheinin during his intake would have had access to records from Mr. Scheinin's previous period of incarceration at the Metropolitan Correctional Center New York.*

- Since Scheinin was searched by BOP following his remand, what, in the BOP's experience, are the possible means by which Scheinin obtained or retained the sodium nitrate or sodium nitrite that caused his death?

*Based on past experience, inmates have smuggled contraband into BOP institutions by hiding items on their persons, which includes ingesting and defecating the items, or placing the items in their anuses. In addition, there have been instances when inmates obtain contraband from other inmates, even when they are confined to their cells by passing contraband on the floor between cells.*

- How, despite the search, did Scheinin obtain or retain the bag of pills and loose pills found in his cell? Was the cell in which he died cleaned before his occupancy, in accordance with protocols?

*Mr. Scheinin was assigned to the Special Housing Unit due to being a former law enforcement investigator. Special Housing Unit cells are cleaned and searched whenever an inmate vacates the cells and prior to a new inmate being placed in the cell. To date, MDC Brooklyn has not determined how Mr. Scheinin retained or obtained the pills found in his cell. As previously advised, he may have ingested the bag containing the pills or placed them in his anus.*

- What was the orange substance contained in the Styrofoam cup found in Scheinin's cell?

*MDC Brooklyn secured the evidence from Mr. Scheinin's cell, which included a portion of the orange substance, and notified the FBI. As the FBI has declined to investigate Mr. Scheinin's death, I understand MDC Brooklyn is sending the portion it collected out for testing. In addition, I understand the medical examiner's office also collected a portion of the orange substance, but I am unaware of what, if any, results came from medical examiner's sample.*

- Were opioids found in Scheinin's bloodstream by the OCME's toxicological analysis? If so, when and how might Scheinin have obtained those opioids?

*The toxicological report shows Mr. Scheinin had opioids in his bloodstream. MDC Brooklyn has learned of no information to show he received or ingested the opioids while in the institution.*

- According to applicable BOP protocols, how frequently should Scheinin have been observed by staff conducting rounds of the SHU? According to BOP's review of relevant video evidence and written logs, at what times did BOP staff visit Scheinin and/or

> observe him between the time he arrived in the SHU on the evening of June 22, 2021 and 6:23 a.m. on June 23, 2021, when BOP staff entered his cell?

*Staff conduct rounds approximately every 30 minutes on an irregular schedule. My review of the relevant video shows Mr. Scheinin was placed in his cell at or about 8:02 p.m., and staff observed him at the following times: 8:32 p.m., 8:58 p.m., 9:39 p.m., 10:35 p.m., 11:16 p.m., 11:43 p.m., 11:58 p.m., 12:28 a.m., 1:03 a.m., 1:31 a.m., 2:02 a.m., 2:38 a.m., 2:40 a.m., 3:07 a.m., 3:38 a.m., 4:11 a.m., 4:40 a.m., 4:42 a.m., 5:12 a.m., 5:41 a.m., and 5:59 a.m. From 5:59 a.m. until Mr. Scheinin was removed from the cell, a staff member remained at the cell.*

- Does BOP's review of applicable records, including any available video recordings and logs, reflect that on the night of June 22-23, 2021 (i) Scheinin requested medical attention, (ii) that other SHU inmates requested medical attention, or (iii) that there was a malfunction in any systems used to alert BOP personnel to medical emergencies?

*There is no record showing Mr. Scheinin or another inmate housed in the Special Housing Unit sought medical attention. MDC Brooklyn is unaware of any malfunction on June 22, or June 23, 2021, to the system inmates use to alert staff of any issues, including medical emergencies. However, during the BOP's review of this incident, two inmates who were interviewed asserted that inmates in the unit requested to see medical staff. One of those inmates asserted that when Mr. Scheinin arrived at his cell he asked when he would be seeing medical staff, and the other inmate asserted that Mr. Scheinin asked to see medical staff when he arrived at his cell. Not every inmate interviewed during the BOP's review confirmed that inmates in the unit requested to see medical staff. No inmates interviewed during BOP's review indicated that any inmate had a medical emergency.*

Respectfully submitted,

*/s/ Darrin Howard*

Darrin Howard
Regional Counsel